## BEFORE THE FIRST DIVISION, MAY 23, 1946

**No. 51149.—**Petition 6498–R of Herbert Schulenberg (New York).

COLE, Judge: The provisions of section 489, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1489), are invoked in this case to obtain the remission of additional duties accruing by reason of the final appraised values exceeding the entered values of decalcomanias imported from Germany and entered at the port of New York.

The case concerns two entries, each relating to a shipment from a different German manufacturer. Both were the subject of reappraisement proceedings (Reappraisement Nos. 139289–A and 139290–A), wherein the parties submitted an agreed set of facts from which the court found a value higher than the importer's entered value. *Herbert Schulenberg v. United States*, 13 Cust. Ct. 415, Reap. Dec. 6077. The question before us is whether, in the entry of the merchandise, petitioner exercised such good faith as is required by the statute. *Kachurin Drug Co. v. United States*, 26 C. C. P. A. 356, C. A. D. 41.

Entry of the goods in question was made by an experienced customs broker, acting for the importer, petitioner herein. He testified that the shipments under consideration covered merchandise similar to that which had been the subject of several earlier entries, and that under such circumstances it was a recognized practice among brokers and customs examiners for the former to present to the latter a so-called "submittal sheet" setting forth the number of a previous entry of like merchandise which was to be followed in appraising the subsequent entry. Such a procedure was followed in making the two entries in question, and in doing so the customs broker made no inquiry concerning value from either petitioner or any customs official, but assumed that the entry cited in the "submittal sheet," was controlling in appraising the instant merchandise. On cross-examination, the witness stated that he had no knowledge at the time of entry of private invoices in the possession of petitioner, but "sometime later," petitioner advised that private invoices "were mailed direct to him from his supplier in Germany."

The customs examiner, who advisorily appraised the shipments, was also called on behalf of petitioner. He corroborated testimony of the previous witness, so far as it related to the general practice of submitting "submittal sheets," but emphasized that when brokers resorted to such procedure "it was on their own—in their own judgment, where in their own judgment market conditions hadn't changed in the interim." Further testimony of the witness concerned his activity when appeals for reappraisement of the instant merchandise were pending. In this connection, he testified that in computing the agreed value submitted before the court in reappraisement he used information obtained through an investigation conducted by customs agents, whose disclosures revealed that the petitioner possessed private invoices showing higher prices charged by the German exporters than those stated on the consular invoices. He referred to the private invoices, themselves (exhibits 2 and 3), received from petitioner's counsel.

In the course of the customs examiner's testimony, counsel stipulated that the selling prices of these decalcomanias, as shown by the private invoices (exhibits 2 and 3) were higher than the values stated on the consular invoices, at which entry was made, and that the final appraised values, *Herbert Schulenberg* v. *United States*, 13 Cust. Ct. 415, Reap. Dec. 6077, were higher than the entered values but lower than those set forth on said private invoices. The parties further stipulated that on the consular invoices petitioner is shown as the purchaser, but on the private invoices the purchasers appear to be, in one instance (exhibit 2) Edwin M. Knowles China Co. of Newel, W. Va., and in the other (exhibit 3) the Salem China Co. of Salem, Ohio.

Petitioner, himself, testified that he has been engaged in the decalcomania business since 1905, and that from the time he began importing in 1930, his customs broker "took care of all custom house matters in relation to the importations that I made." He further stated that he was the exclusive United States agent for the manufacturers of the instant merchandise, and that as such agent he solicited business and sent orders to the German factories, having an understanding with the foreign manufacturers that "I was to purchase the goods from them and reship them to the potteries," delivery to the customer in this country being arranged with the customs broker. Referring specifically to the two entries under consideration, the witness testified that bills in payment for the instant merchandise were sent to the firms hereinabove set forth and named on the private invoices (exhibits 2 and 3) for the stated amounts, which were paid by the respective purchasers to petitioner, whose usual practice is to deduct amounts for ocean freight, insurance, duty, and selling commission, and then remit the proceeds to his foreign principals. In one of the shipments under consideration, he "retained the funds to take care of additional duties that I was facing" because it was a "small shipment," but in the other the balance due was sent to the German manu-

facturer. Explaining his attitude, in allowing entry to be made at the lower consular invoice values, he stated that such prices were in line with those of competitors, "they were all approximately the same, that is the export selling prices, as far as I can judge." He admitted being investigated by a customs agent, stating, "I showed him everything he wanted to see and gave him all the information he wanted." Cross-examination emphasized that the consular invoices did not express the actual terms of the sales, the true details being set forth on the said private invoices, which not only reflect the orders placed by the American potteries, but also state the correct prices and reveal the relationship of petitioner as agent for the German manufacturers. The witness also admitted that he did not advise his customs broker of his possession of the private invoices, although he had them prior to entry of the merchandise in question.

*Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, set forth in the following comprehensive language the burden of a petitioner seeking relief under section 489, *supra:*

* * * First, that, in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to him when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; and, third, that he has made to the collector, in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

On the record before us, petitioner falls far short in meeting his obligations, as expressed in that case. It was not until after entry of the shipments in question, and then only in the course of an investigation by a customs agent, that he released his vitally important private invoices. Prior to entry, which is the time element in determining issues of this character, petitioner withheld all information not only from customs authorities but also from the customs broker, his duly authorized agent, whose actions in all customs matters concerning petitioner's importations, were fully recognized by petitioner and accepted by him.

*National Biscuit Co.* v. *United States*, 20 C. C. P. A. 395, T. D. 46187, denied a petition like the one before us, and summarized the conclusion, as follows:

It thus appears that at the time these goods were entered those directing the entry, including the petitioner herein, knew that goods identical with or similar to the goods entered had a foreign-market value greater than that at which they were entered, to wit, their unit invoice price, less a discount of 17½ per centum, less 1 per centum for cash. It also appears that, having this information, it was not given to the local appraisers. However, the appellant failed to do the things which this court has said on numerous occasions it is the duty of a petitioner to do if it is to obtain remission of additional duties under these sections. It must, when it makes its entry, give to the appraising officer all information which it may possess as to the dutiable value of the goods entered.

The responsibilities of petitioner, as set forth in the cases hereinabove cited, have not been met with respect to the two entries in question.

The petition is denied and judgment will be rendered accordingly.